STATE OF NORTH CAROLINA v. JERRY PENLEY

No. 88

(Filed 20 January 1971)

**1. Kidnapping § 1— failure of statute to define kidnapping**

The failure of G.S. 14-39 to define kidnapping does not render the statute vague or uncertain, the common law definition being incorporated in the statute by construction.

**2. Kidnapping § 1— definition of "kidnap"**

At common law and as used in G.S. 14-39, the word "kidnap" means the unlawful taking and carrying away of a person by force and against his will.

**3. Kidnapping § 1— threats and intimidation amounting to force**

The use of actual physical force or violence is not essential to the commission of the offense of kidnapping, it being sufficient if there are threats and intimidation and appeals to the fear of the victim which are sufficient to put an ordinary prudent person in fear for his life or personal safety and to overcome the will of the victim and secure control of his person without his consent and against his will.

**4. Indictment and Warrant § 9— charge of crime**

An indictment is sufficient if it charges the offense in a plain, intelligible, and explicit manner and contains averments sufficient to enable the court to proceed to judgment and to bar a subsequent prosecution for the same offense.

**5. Indictment and Warrant § 9— charge in language of statute**

An indictment for a statutory offense is sufficient, as a general rule, when it charges the offense in the language of the statute.

**6. Kidnapping § 1— sufficiency of indictment**

Bill of indictment charging that defendant "did unlawfully, wilfully, feloniously and forcibly kidnap" a named person, *held* sufficient to withstand a motion to quash, since the word "kidnap" has a definite legal meaning.

**7. Criminal Law § 88— cross-examination for impeachment of witnesses' credibility**

In this prosecution for the kidnapping of the driver of a prison bus during an escape of prisoners from the bus, cross-examination of defendant's witnesses, prisoners who had participated in the escape, as to how many times they had talked with each other about the case, who planned the escape, and whether one witness had told police he knew nothing about the matter, *held* competent for the purpose of impeaching the credibility of the witnesses.

**8. Criminal Law § 88— scope of cross-examination**

In North Carolina the scope of inquiry on cross-examination is not confined to those matters testified to on direct examination, but

State v. Penley

questions are permissible to impeach, diminish or impair the credit of the witness.

9. **Criminal Law § 88— interest or credibility of witness**
　　Questions and answers which directly challenge the interest or credibility of a witness are competent.

10. **Criminal Law § 88— cross-examination to show bias**
　　Both the State and the defendant have a right to cross-examine a witness to show his bias or interest.

11. **Criminal Law § 89— impeachment — prior inconsistent statements**
　　Prior inconsistent statements of a witness are always admissible for the purpose of impeachment.

12. **Kidnapping § 1— distance traveled**
　　The distance traveled is not material in a kidnapping prosecution.

13. **Kidnapping § 1— prison bus driver — sufficiency of evidence to support verdict**
　　Evidence that defendant prisoner held a rifle pointed at the prosecuting witness, who had been driving a bus loaded with prisoners, while another prisoner drove the bus for a distance of one to one and one-half miles, and that the prosecuting witness wanted to get off the bus but was refused permission to do so by defendant, *held* sufficient to support a verdict finding defendant guilty of kidnapping.

APPEAL by defendant from judgment of *Tillery, J.,* August 1970 Criminal Session HALIFAX Superior Court.

Criminal prosecution upon a bill of indictment charging that defendant on 9 June 1970, with force and arms, at and in the County of Halifax, did unlawfully, willfully, feloniously and forcibly kidnap Wyatt H. Carter, a violation of G.S. 14-39.

Upon the call of the case for trial in superior court, defendant moved to quash the bill of indictment "for insufficient wording to allege kidnapping." This motion was denied.

The State's evidence tends to show that on 9 June 1970 Officer Wyatt H. Carter was the driver of a prison bus which transported a work detail of about thirty-five prisoners, including defendant, from Odom Prison to Caledonia Farm. At approximately 3:30 p.m. the prisoners were loaded on the bus for the return trip to Odom. Officer Carter was unarmed, but two armed guards were riding in the cab with him—Officer Callahan with a 223 Remington high-powered rifle and Officer Smith with a double-barreled shotgun and a .38 pistol. Between the driver's section and the prisoners' compartment in the rear of

the bus there was a heavy gauge steel mesh wire containing a small sliding door with a padlock on the driver's side. The prisoners knew the padlock was missing on this return trip and, when the bus choked down as it approached an intersection, they rushed through the sliding door. Officers Callahan and Smith, one of whom was standing up in the steps and the other sitting in a chair nearby, and one inmate were carried out of the bus "in a pile on top of each other and a chair went out along with them." Officer Callahan's rifle was standing in a corner behind the driver's seat. Defendant got it and told Officer Carter to sit down in a chair and shut up or he would kill him. A pistol shot was fired inside the bus by another prisoner. Defendant held the rifle on Officer Carter while another prisoner drove the bus a distance of one to one and one-half miles, stopping four times for prisoners to depart into the woods. Defendant Penley left at the third stop. Officer Carter begged defendant not to hurt him, asked them to put him off and take the bus, but defendant held the rifle on Carter and kept him on the bus until defendant left it and fled into the woods, taking the rifle with him. When the bus stopped the last time the prisoner-driver left and took the switch keys with him. At that time Officer Carter left. He was not harmed.

Defendant did not testify but offered the testimony of four prisoners who participated in the escape. They testified that defendant at no time had a weapon of any kind, did not hold a rifle on Officer Carter and did not threaten him.

From a verdict of guilty and judgment pronounced thereon, defendant appealed to the Court of Appeals. The case was transferred to this Court under its general referral order dated July 31, 1970.

*Parker & Dickens by William F. Dickens, Jr., Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, by Millard R. Rich, Jr., and Andrew A. Vanore, Jr., Assistant Attorneys General for the State.*

HUSKINS, Justice.

[6] Defendant contends the trial court erred in denying his motion to quash the bill of indictment, arguing that the common law definition of kidnapping must be used in a kidnapping in-

dictment in order to inform the defendant of the charges against him. No authority is cited for his position.

G.S. 14-39 provides in pertinent part: "It shall be unlawful for any person . . . , male or female . . . to kidnap . . . any human being. . . . Any person . . . violating . . . any provisions of this section shall be guilty of a felony. . . . "

[1] We held in *State v. Lowry and Mallory,* 263 N.C. 536, 139 S.E. 2d 870 (1965), that the failure of G.S. 14-39 to define kidnapping did not render the statute vague or uncertain and that the common law definition of the offense is incorporated in the statute by construction. " . . . [W]hen a statute punishes an act giving it a name known to the common law, without otherwise defining it, the statute is construed according to the common law definition." 22 C.J.S., Criminal Law, § 21; *Johnson v. Commonwealth,* 209 Va. 291, 163 S.E. 2d 570 (1968) ; *State v. McLarty,* 414 S.W. 2d 315 (Mo. 1967) ; *State v. Taylor,* 46 N.J. 316, 217 A. 2d 1 (1966).

[2, 3] At common law and as used in G.S. 14-39, the word "kidnap" means the unlawful taking and carrying away of a person by force and against his will. *State v. Lowry and Mallory, supra.* "The use of actual physical force or violence is not always essential to the commission of the offense of kidnapping. . . . The crime of kidnapping is frequently committed by threats and intimidation and appeals to the fears of the victim which are sufficient to put an ordinarily prudent person in fear for his life or personal safety, and to overcome the will of the victim and secure control of his person without his consent and against his will, and are equivalent to the use of actual force or violence." *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966).

[4-6] Here, the bill of indictment is drafted in the language of the statute. It charges defendant with kidnapping without defining the word. This is sufficient. If an indictment charges the offense in a plain, intelligible, and explicit manner and contains averments sufficient to enable the court to proceed to judgment, and to bar a subsequent prosecution for the same offense, it is sufficient. *State v. Anderson,* 259 N.C. 499, 130 S.E. 2d 857 (1963) ; *State v. Daniel,* 255 N.C. 717, 122 S.E. 2d 704 (1961). An indictment for a statutory offense is sufficient, as a general rule, when it charges the offense in the language of the statute. *State v. Hord,* 264 N.C. 149, 141 S.E. 2d 241 (1965) ; *State v.*

*Sossamon,* 259 N.C. 374, 130 S.E. 2d 638 (1963) ; *State v. Wells,* 259 N.C. 173, 130 S.E. 2d 299 (1963).

In *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406 (1966), a bill of indictment charging that defendant "unlawfully, wilfully, feloniously and forcibly did kidnap" a named person was held sufficient to withstand a motion to quash, since the word "kidnap" has a definite legal meaning. It follows, therefore, that defendant's challenge to the sufficiency of the bill of indictment in this case is without merit and is overruled. We think the bill adequately informed defendant of the charge against him and that he understood it.

[7] On cross-examination of a defense witness, the solicitor, over defendant's objection, asked: "How many times have you and Mr. Penley and Mr. Shores and Mr. Pope and anyone else talked about this case?" Again over objection, the solicitor asked another defense witness: "Who planned the whole escape?" A third time, over objection, the solicitor asked the witness on cross-examination: "I ask you if you have not talked to . . . police officers and told them you didn't know anything or did not see anything?" Defendant contends the solicitor was permitted in this manner to create the impression before the jury that defendant had conspired with his witnesses concerning their testimony and that defendant planned the escape, all of which was collateral to the main issue and had no relevancy to the kidnap charge against him.

[8] This assignment of error has no merit. North Carolina adheres to the "wide-open" rule of cross-examination, so called because the scope of inquiry is not confined to those matters testified to on direct examination. Note, 45 N. C. L. Rev. 1030 (1967). In *State v. Dickerson,* 189 N.C. 327, 127 S.E. 256 (1925), the Court said: "The cross-examination is not confined to matters brought out on the direct examination, but questions are permissible to impeach, diminish or impair the credit of the witness. These questions often take a wide range, but should be confined to questions within the bounds of reason—the materiality is largely left to the discretion of the court." *See also State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778 (1970) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970) ; *State v. Sheffield,* 251 N.C. 309, 111 S.E. 2d 195 (1959) ; Stansbury, North Carolina Evidence (2d Ed., 1963) §§ 56-57; Jones on Evidence, (5th Ed., 1958) §§ 928-929.

[9-11] Questions and answers which directly challenge the interest or credibility of a witness are competent. *State v. Hart,* 239 N.C. 709, 80 S.E. 2d 901 (1954). Both the State and the defendant have a right to cross-examine a witness to show his bias or interest. *State v. Wilson,* 269 N.C. 297, 152 S.E. 2d 223 (1967) ; *State v. Creech,* 229 N.C. 662, 51 S.E. 2d 348 (1949). And for the purpose of impeachment, prior inconsistent statements of a witness are always admissible. *State v. Cope,* 240 N.C. 244, 81 S.E. 2d 773 (1954).

[12, 13] The evidence in this case shows that the prosecuting witness wanted to get off the bus and requested permission to do so. This request was refused by defendant, who held a rifle pointed at Carter while the bus continued to travel. The distance traveled is not material, *State v. Lowry and Mallory, supra,* although the evidence shows Carter was held captive for a mile or more. The defendant by force and threat of violence took Carter and carried him where he did not consent to go. This constitutes kidnapping under our statute. The verdict was proper and will be upheld.

No error.